# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MIGUEL G. SIFUENTES,

        Plaintiff,

   v.

DR. OLA, et al.,

        Defendants.

**1:16-cv-00241-DAD-GSA PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT OLA'S MOTION FOR SUMMARY JUDGMENT BE GRANTED**
**(ECF No. 54.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.    BACKGROUND

Miguel G. Sifuentes ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's First Amended Complaint filed on April 26, 2017, against defendant Dr. Ola ("Defendant") for failure to provide adequate medical care in violation of the Eighth Amendment. (ECF No. 21.)

On May 28, 2021, Defendant Ola filed a motion for summary judgment.  (ECF No. 54.)  On March 30, 2022, Plaintiff filed an opposition to the motion.[1]  (ECF No. 70.)[2]  On May 26, 2022, Defendant filed a reply to the opposition.  (ECF No. 76.)  Pursuant to Local Rule 230(*l*), this motion is now before the court.

For the reasons set forth below, the court recommends that Defendant's motion for summary judgment be granted.

## II.     SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106

---

[1] Together with the motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 54 at 2-3.)

[2] On April 28, 2022, District Judge Dale A. Drozd issued an order referring this case back to the undersigned for consideration of Plaintiff's "in the alternative" opposition to Defendant's motion for summary judgment, and to set a deadline for Defendant to file a reply, if any, to Plaintiff's opposition. (ECF No. 74 at 3:24.) Accordingly, Plaintiff's "in the alternative" opposition, submitted by Plaintiff to the Court on March 30, 2022, is accepted for consideration by the court as an opposition to Defendant's motion for summary judgment. (ECF No. 70 at 3- 10.)

S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." Id.  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.   PLAINTIFF'S ALLEGATIONS -- FIRST AMENDED COMPLAINT[3]

Plaintiff is presently incarcerated at San Quentin State Prison in San Quentin, California. The events at issue in the First Amended Complaint allegedly occurred when Plaintiff was incarcerated at Pleasant Valley State Prison in Coalinga, California in the custody of the

///

---

[3] Plaintiff's original Complaint and First Amended Complaint are verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

California Department of Corrections and Rehabilitation (CDCR).   The sole Defendant remaining in the case is Dr. Akinwumi Ola ("Defendant").[4]

The gravamen of the First Amended Complaint is that Plaintiff presented to PVSP medical staff with bruises and a puncture wound to his abdomen, but Defendant Dr. Ola failed to properly diagnose and treat the wound resulting in Plaintiff's being  transported to the emergency room at CRMC-Fresno2. There it was found that the puncture wound had penetrated the abdominal wall and Plaintiff was bleeding internally. Emergency surgery was performed to save his life. Post-surgery, back at PVSP, Plaintiff complained of new abdominal pains and blood in his stool, but was only offered ineffective pain medications. Weeks later Plaintiff was finally given a CT scan and MRI without substantive follow-up. Plaintiff's allegations follow:

Beginning on May 29, 2014, Defendant and other staff members violated Plaintiff's right to adequate health care. Numerous medical staff members denied him simple diagnosis and treatment despite documented knowledge of Plaintiff's serious medical needs because he had a life-threatening puncture wound to the abdomen. At 11:45 a.m., Plaintiff was briefly examined at the B-yard infirmary and taken to TTA3 for evaluation, but no significant diagnosis or treatment was given. Dr. Fortune [not a defendant] was the doctor. At 12:29 p.m. at PVSP's CTC4 infirmary, Defendant Dr. Ola chose to disregard the seriousness of Plaintiff's injury and ignored his severe pain, providing no treatment beyond what was routine for lesser superficial injuries. Defendant Ola noted that "[d]istal end shows possible penetration of abdominal wall," but did not follow up with diagnostic tests for an abdominal puncture wound. (ECF No. 21 at 13 ¶1.) Before x-rays were taken defendant Ola determined that there was no head injury and only a superficial wound to the abdomen. Defendant Ola stitched the wound, ordered Tylenol and the medication Kerflex and scheduled Plaintiff for follow up on Monday June 2, 2014. Plaintiff would have died by Monday due to blood loss. Dr. Ola and Dr. Goller [not a defendant] reviewed Plaintiff's abdominal x-rays and noted no damage.

By 2:15 p.m., Dr. Ola knew that further tests were necessary and there was a grave risk

---

[4] On May 13, 2019, the Court issued an order dismissing all other claims and defendants from this action based on Plaintiff's failure to state a claim.  (ECF No. 38.)

of death based on Plaintiff's repeated complaints to him and his staff of extreme pain. No further diagnostic tests or treatment were ordered. There were ten different signatures on Plaintiff's report, including C. Douglas, J. Howard LVN, S. Cass, J. Padilla, C. Hererd, B. Guam, M. Nadev SRN II, and some illegible signatures. Plaintiff was placed in Administrative Segregation (Ad-Seg) at approximately 3:00 p.m. on May 29, 2014. He continued to complain and became incapacitated from pain and blood loss over a 55-hour period while he was in isolation without care. Plaintiff's condition deteriorated until he was obviously frail. Plaintiff later saw his own signature on a medical form, which he does not remember signing, and his signature was almost illegible. During this time Plaintiff could not sit or lie down in a way that alleviated the intolerable pain. He alleges that he almost bled to death.

On May 31, 2014, Plaintiff went to Ad-Seg medical. Plaintiff was taken to the hospital with serious symptoms such as rapid and shallow breathing, moist skin, anxiety, drop in blood pressure, heart rate fluctuations and severe pain. The hospital noted that Plaintiff was minimally responsive at the prison. Once at CRMC on May 31, 2014, Plaintiff was in a coma for two days and contracted an abdominal infection during his thirteen-day hospital stay. He states that he was put through an unnecessary exploratory laparotomy on May 31, 2014. Plaintiff was then taken to the PVSP infirmary until July 10, 2014, "where he began a months-long attempt at recovery despite Defendant's continued actions." (ECF No. 1 at 7.)[5] Plaintiff contends that from May 29, 2014, through his July 10, 2014 release from the PVSP infirmary, nurses and custody staff ignored his post-op abdominal pains.

## IV.   PLAINTIFF'S MEDICAL CLAIM – LEGAL STANDARD

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for

---

[5] All page numbers cited herein are those assigned by the Court's CM/ECF system and not based on the parties' pagination of their briefing materials.

deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .

that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

## V.   DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS[6]

Defendant Dr. Akinwumi Ola submits the following statement of undisputed facts and evidence in support of his motion for summary judgment:

1.   Plaintiff Miguel F. Sifuentes has been incarcerated by the California Department of Corrections and Rehabilitation ("CDCR") since 2003. (Hsu Decl. at ¶ 2 & Ex. A ("Plaintiff Depo.") at 9:17-22.)

2.   In 2003, Plaintiff was convicted of first degree murder and sentenced to serve 26 years to life. (Plaintiff Depo. at 9:17-22.)

3.   Plaintiff's arrest took place on December 11, 1998 for the robbery of an Outback Steakhouse Restaurant in Alameda County. (Plaintiff Depo. at 9:25-10:5.) The murder victim was an Alameda County deputy sheriff. (Plaintiff Depo. at 10:15-19.)[7]

4.   Plaintiff has not worked in the medical field before. (Plaintiff Depo. at 10:8-10.)

5.   Plaintiff has had no formal medical training. (Plaintiff Depo. at 10:8-10.)

6.   Defendant Dr. Akinwumi Ola is a Medical Doctor, licensed by the State of California as a Physician and Surgeon since April 27, 2011. (Declaration of Dr. Ola ("Def. Decl.") at ¶1.)  He is, and was, at all times relevant to the allegations

---

[6] Plaintiff failed to properly address Defendants' statement of undisputed facts, as required by Local Rule 260(b).  Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion.  Id; Fed. R. Civ. P. 56(e)(2).  However, in light of the Ninth Circuit's directive that a document filed pro se is "to be liberally construed," Estelle, 429 U.S. at 106. Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.  In his opposition to the motion for summary judgment filed on March 30, 2022, Plaintiff responded to and disputed some of Defendant's Undisputed Facts. (ECF No. 70 at 2-8.)  The Court has considered Plaintiff's disputes with Defendant's Undisputed Facts in its analysis.

[7] Plaintiff disputes that there is any relevance to his arrest, the circumstances of his crime, or the status of the murder victim in this case.  (ECF No. 63 at 6 ¶ 3.)

7

in this case, employed by CDCR as a Physician & Surgeon at the Pleasant Valley State Prison ("PVSP") in Coalinga, California. (Def. Decl. at ¶ 1.)

7.   As a Physician and Surgeon for the CDCR, Dr. Ola's duties include providing medical care to inmate-patients at the PVSP Correctional Treatment Center ("CTC"). (Def. Decl. at ¶¶ 1, 3.)

8.   PVSP is a California Department of Corrections and Rehabilitation correctional facility located at Coalinga, California. (Def. Decl. at ¶ 1.)

9.   Plaintiff was housed at the PVSP beginning in 2011. (Plaintiff Depo. at 12:25-13:2.)

10.   Plaintiff was transferred to the San Quentin State Prison on or about January 30, 2015 where he is still currently housed. (Plaintiff Depo. at 12:16-19.)

11.   At all relevant times, Plaintiff was incarcerated and held at PVSP during the events giving rise to this action against Defendant (Plaintiff Depo. at 13:3-11.)

12.   On or about May 29, 2014, at approximately 11:00 a.m., Plaintiff was attacked by other inmate(s) while he was out at B yard during yard time. (Plaintiff Depo. at 13:3-8, 12-15, 16-23.) Plaintiff was first escorted to the clinic on B yard. (Plaintiff Depo. at 15:12-19.) Then, he was escorted to the CTC where he was seen by Dr. Ola. (Id.)

13.   Plaintiff had never seen Dr. Ola prior to May 29, 2014. (Plaintiff Depo. at 16:8-10.)

14.   Once at the CTC, Plaintiff was treated by Dr. Ola who was the CDCR Physician and Surgeon who assessed, diagnosed, and rendered emergency medical services to Plaintiff. (Plaintiff Depo. at 23:23-24:1, Def. Decl. at ¶¶ 3-4.)[8]

///

///

---

[8] Plaintiff disputes Undisputed Fact (UF) No. 14, that Defendant ADEQUATELY "assessed, diagnosed, and rendered emergency medical services to Plaintiff." (Id. at 6 ¶ 14.)

15.     Dr. Ola checked Plaintiff's vitals and found them to be stable. Plaintiff complained to Dr. Ola that he had pains from his bruises and abdomen. (Plaintiff Depo. at 25:7-19, Def. Decl. at ¶ 7.)[9]

16.     During Dr. Ola's examination of Plaintiff, Plaintiff refused to provide details of what transpired to cause his injuries. (Def. Decl. at ¶ 5.) Plaintiff refused to discuss the nature of the assault, the number of inmates involved or whether any instruments were used during the attack. (Id.)[10]

17.     No weapon or any sharp objects found at the scene of the incident on the yard. (Def. Decl. at ¶ 6.)

18.     Plaintiff presented with visible injuries to his face and abdomen. (Plaintiff Depo at 26:1-10; Def. Decl. at ¶ 8.)

19.     Plaintiff had an abdominal wound measuring about 1 to 2 centimeters in length. (Def. Decl. at ¶ 9.) Plaintiff exhibited moderate tenderness around the wound area, and he had bowel sounds in all four (4) quadrants. (Id.) DISPUTED AS TO SIZE

20.     Dr. Ola conducted a local wound exploration of Plaintiff's abdominal wound with a cotton swab in order to examine the fascia of the muscle protecting the abdomen. (Plaintiff Depo. at 29:16-19, Def. Decl. at ¶ 10.) No finding to suggest an abdominal penetration. (Def. Decl. at ¶ 10.) Dr. Ola closed Plaintiff's abdominal wound with two (2) sutures. (Plaintiff Depo. at 31:20- 32:2, Def. Decl. at ¶ 10.)[11]

///

---

[9] Plaintiff disputes UF No. 15 as to Defendant's representation and the intended relevance of how he "complained to Dr. Ola that he had pains more than enough to receive adequate medical diagnosis and treatment. Plaintiff argues that Defendant's responsibility for treatment cannot be dependent on the amount of information Plaintiff did or did not give to Defendant. (Id. at 6 ¶ 15.)

[10] Plaintiff disputes UF No. 16, that he "refused to provide details of what transpired to cause his injuries" and the relevance of this information to Dr. Ola pursuing adequate diagnosis and treatment. Plaintiff states that he (Plaintiff) did not have more information about the attack, in fact, did not even know that he had been stabbed himself. (Id. at 7 ¶ 16.)

[11] Plaintiff disputes UF No. 20, that there was "no finding to suggest an abdominal penetration." (Id. at 7 ¶ 20.)

21.   Dr. Ola ordered X-rays to be taken of Plaintiff's face and abdomen. (Plaintiff Depo. at 29:8-15, Def. Decl. at ¶ 11.)

22.   The radiology report stated no indication of any air under the diaphragm or foreign body in the abdomen which would indicate a breach of the abdominal cavity. (Def. Decl. at ¶ 11, Plaintiff's Complaint, ECF 1, p. 61.) The radiologist, Dr. D. Goller, concluded in the report that there was no perforation of the abdominal cavity, and no indication for exploratory laparotomy of Plaintiff. (Id.)

23.   Plaintiff agrees that Dr. Ola did not have additional information different from what was contained in the radiology reports by Dr. D. Goller at the time Dr. Ola rendered medical treatment to him. (Plaintiff Depo. at 103:22-104:1.)

24.   Dr. Ola did not observe symptoms of penetration of abdominal cavity requiring laparotomy such as hemodynamic instability, peritonitis, impalement, evisceration and presence of frank blood or bleeding during his examination of Plaintiff on May 29, 2014. (Def. Decl. at ¶ 12, Plaintiff's Complaint, ECF 1, p. 56.)

25.   Dr. Ola educated and told Plaintiff about the signs of infection and peritonitis, which would be a symptom of a penetrating injury that requires exploratory laparotomy. (Def. Decl. at ¶ 13.) Dr. Ola told Plaintiff to inform the clinical or custodial staff if he were to experience worsening pain or tenderness. (Id.)

26.   Dr. Ola prescribed Plaintiff with an oral antibiotic Cephalexin and pain medications, Tylenol 3. (Plaintiff Depo. at 20:7-21, Def. Decl. at ¶ 13.)

27.   Dr. Ola confirmed that Plaintiff would be placed in protective custody and in administrative segregation. (Plaintiff Depo. at 37:8-12, Def. Decl. at ¶ 14.) Dr. Ola issued a medical order for Plaintiff to have welfare checks daily for three (3) days, take follow-up X-ray(s). (Plaintiff Depo. at 35:6-19, Def. Decl. at ¶ 14.) Dr. Ola also scheduled an appointment for Plaintiff to be seen by his primary care physician on June 2, 2014. (Def. Decl. at ¶ 14.)

///

28.   Plaintiff was at the CTC, after the inmate attack, for about three hours and 20 minutes. (Plaintiff Depo. at 33:5-17.)

29.   While Plaintiff was housed in administrative segregation or protective custody after the incident on May 29, 2014, correctional officers did rounds about three times a day for feeding, medication pass, and count. (Plaintiff Depo. at 51:9-19.)

30.   On May 31, 2014, at around 4:00 p.m., Plaintiff was transferred from his administrative segregation cell to the clinic. (Plaintiff Depo. at 40:18-42:6.)

31.   Dr. Ola was the on-call CDCR Physician and Surgeon for PVSP CTC on Saturday May 31, 2014. (Def. Decl. at ¶ 15.) Dr. Ola received a telephone call from a CDCR nurse who explained Plaintiff's symptoms and presentation. (Id.) This is the first time since Dr. Ola had treated Plaintiff on May 29, 2014 that he was receiving an update regarding Plaintiff's medical condition. (Id.)

32.   During the call, Dr. Ola immediately ordered that Plaintiff be transferred Code 2 by ambulance to an outside hospital for emergency medical treatment of his worsening condition. (Def. Decl. at ¶ 15.)

33.   At around 5:30 p.m., Plaintiff was transported out of PVSP by ambulance to a local hospital. (Plaintiff Depo. at 44:5-20, Def. Decl. at ¶ 16.)

34.   At around 7:30 p.m., on May 31, 2014, Plaintiff was admitted to the local hospital where Dr. Townsend performed emergency exploratory laparotomy to remove sections of Plaintiff's lower bowels and small intestines. (Plaintiff Depo. at 64:6-15, 69:1-16, 72:13-73:1, Def. Decl. at ¶ 16.) On June 9, 2014, a subsequent surgery was also performed upon Plaintiff's abdomen with no complications from the surgeries noted. (Plaintiff Depo at 70:3-8, 72:13-73:1, Def. Decl. at ¶ 16.)

35.   At no time during Dr. Ola's treatment of Plaintiff's injuries did he seek to intentionally harm Plaintiff. (Plaintiff Depo. at 113:10-18, Def. Decl. at 17.)

36.   Dr. Ola provided the proper care needed under the circumstances and with the knowledge that he had at the time when he provided emergency medical treatment to Plaintiff on May 29, 2014. (Def. Decl. at ¶ 17.)

37. Plaintiff believes that Dr. Ola is deliberately indifferent to his medical needs because he disagreed with Dr. Ola's treatment plan. (Plaintiff Depo. at 111:8-12, Plaintiff's Complaint, ECF 1, p. 56.)

38. There was nothing in Plaintiff's medical records demonstrating deliberate indifference on the part of Dr. Ola as claimed in the Complaint. In fact, Plaintiff received appropriate medical treatment from Dr. Ola that was at or above the standard of care under the circumstances as presented. (Def. Decl. at ¶¶ 12, 17.)

## VI.   DEFENDANT OLA'S POSITION

Defendant argues that Plaintiff's Eighth Amendment deliberate-indifference claim fails because Dr. Ola was not deliberately indifferent to Plaintiff's serious medical needs.

Defendant submits as evidence Plaintiff's medical records, Defendant's Undisputed Facts (ECF No. 54-2), Declaration of Cheryl W. Hsu, defense counsel (ECF No. 54-3), and exhibits thereto (excerpts from Plaintiff's deposition dated January 22, 2021 (ECF No. 54-3 at 5-37)), Declaration of Defendant Ola (ECF No. 54-4), pleadings, records, and files.

Defendant's argument follows:

### **Dr. Ola was Not Deliberately Indifferent to Plaintiff's Medical Needs**

Based on the evidence below, Defendant argues that Plaintiff's claim fails as a matter of law and thus Dr. Ola is entitled to summary judgment.  Dr. Ola's treatment plan established on May 29, 2014 was within the appropriate standard of care, and he had no ill-intent in deliberately harming Plaintiff.

As soon as Plaintiff was escorted to the PVSP CTC, Dr. Ola began his patient assessment, diagnosis, and treatment of Plaintiff's injuries. (Plaintiff Depo. at 26:1-10, 29:8-19, 31:20-32.2, 103:22-104:1; Def. Decl. at ¶¶ 5-6, 8-12; Plaintiff's Complaint, ECF No. 1 at 56, 61.)  During the patient examination Plaintiff refused to provide details of what transpired to cause his injuries. (Def. Decl. at ¶ 5.)  Plaintiff also refused to discuss the nature of the assault, the number of inmates involved, or whether any instruments were used during the attack. (Id.) Dr. Ola was told that no weapon or any sharp objects were found at the scene of the incident on the yard. (Def. Decl. at ¶ 6.) Specifically, Plaintiff presented with visible injuries to his face and abdomen.

12

(Plaintiff Depo. at 26:1-10; Def. Decl. at ¶ 8.) He had an abdominal wound measuring about 1 to 2 centimeters in length. (Def. Decl. at ¶ 9.) He also exhibited moderate tenderness around the wound area, and he had bowel sounds in all four (4) quadrants. (Id.)

Next, Dr. Ola conducted a local wound exploration of Plaintiff's abdominal wound with a cotton swab in order to examine the fascia of the muscle protecting the abdomen. (Plaintiff Depo. at 29:16-19, 31:20-32:2; Def. Decl. at ¶ 10.) Dr. Ola determined that there was no finding to suggest an abdominal penetration. (Id.) He then closed Plaintiff's abdominal wound with two (2) sutures. (Id.) Subsequently, Dr. Ola ordered x-rays to be taken of Plaintiff's face and abdomen. (Plaintiff Depo. at 29:8-15; Def. Decl. at ¶ 11.)

Notably, the radiology report stated no indication of any air under the diaphragm or foreign body in the abdomen which would indicate a breach of the abdominal cavity. (Def. Decl. at ¶ 11, Plaintiff's Complaint, ECF 1, p. 61.) The radiologist, Dr. Goller, concluded in the report that there was no perforation of the abdominal cavity, and no indication for exploratory laparotomy of Plaintiff. (Id.) Plaintiff conceded at his deposition that Dr. Ola did not have additional information different from what was contained in the radiology reports by Dr. Goller at the time Dr. Ola rendered medical treatment to him. (Plaintiff Depo. at 103:22-104:1.) In other words, Dr. Ola made the best patient care or treatment plan based on the information he had received and observed at the time of the patient examination.

Moreover, during his examination of Plaintiff, Dr. Ola did not observe symptoms of penetration of abdominal cavity requiring laparotomy such as hemodynamic instability, peritonitis, impalement, evisceration and presence of frank blood or bleeding. (Def. Decl. at ¶ 11; Plaintiff's Complaint, ECF 1, p. 61.) Dr. Ola also told Plaintiff to inform the clinical or custodial staff if he were to experience worsening pain or tenderness. (Id.) Dr. Ola prescribed Plaintiff with an oral antibiotic Cephalexin and pain medications, Tylenol 3. (Plaintiff Depo. at 20:7-21; Def. Decl. at ¶ 13.) Furthermore, Dr. Ola confirmed that Plaintiff would be placed in protective custody and in administrative segregation. (Plaintiff Depo. at 35:6-19, 37:8-12, Def. Decl. at ¶ 14.) He issued a medical order for Plaintiff to have welfare checks daily for three (3) days, take follow-up X-ray(s). (Id.) He also scheduled a medical appointment for Plaintiff to be

seen by his primary care physician on June 2, 2014. (Id.) All of Dr. Ola's medical treatment of Plaintiff on May 29, 2014 was within the standard of medical care due to a patient similarly situated.

Additionally, Dr. Ola's actions did not rise to deliberate indifference towards Plaintiff's serious medical needs as evidenced by his prompt action to transfer Plaintiff out of PVSP via ambulance Code 2 to a local hospital for immediate medical treatment as soon as he was made aware that Plaintiff's condition had worsened via a telephone call he had received from a CDCR nurse on May 31, 2014. (Plaintiff Depo. 44:5-20; Def. Decl. at ¶¶ 15, 16.)

Plaintiff's mere disagreement with Dr. Ola's treatment plan does not rise to the level of deliberate indifference, nor could he point to any evidence indicating that Dr. Ola had set out to deliberately harm or hurt him in any way during the time that he was treating Plaintiff's injuries. (Plaintiff Depo. at 64:6-15, 69:1-16, 70:3-8, 72:13-73:1; Def. Decl. at ¶ 16.)  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (finding that plaintiff's receipt of treatment for his ailments raised a difference of medical opinion regarding the treatment received and did not amount to deliberate indifference); Toguchi, 391 F.3d at 1058-59; Case 1:16-cv-00241-DAD-GSA  (upholding grant of summary judgment where doctor opted to prescribe one medication over another); see also, Jackson, 90 F.3d at 332. Plaintiff testified at his deposition on January 22, 2021 that he did not believe Dr. Ola had intentionally set out to harm or hurt him during the time that Dr. Ola had provided medical treatment to him. ((Plaintiff Depo. at 64:6-15, 69:1-16, 70:3-8, 72:13-73:1; Def. Decl. at ¶ 16.)

## VII.   DEFENDANT OLA HAS MET HIS BURDEN

Based on Defendant's arguments and evidence, the court finds that Defendant has met his burden, therefore the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

///

///

## VIII.   PLAINTIFF'S DISPUTED FACTS

On March 30, 2022, Plaintiff submitted the following Disputed Facts (ECF No. 70), and on May 26, 2022, Defendant Ola responded to Plaintiff's Disputed Facts (ECF No. 77).

| **PLAINTIFF'S DISPUTED FACTS** | **DEFENDANT'S OBJECTIONS/ARGUMENTS** |
| --- | --- |
| 3.  Plaintiff disputes the relevance of his arrest, crime and status of murder victim. | 3.  Plaintiff testified to the facts surrounding his criminal offense, the victim of the crime, his conviction and sentence at his deposition.  He has no admissible evidence to contradict his own testimony, and this disputed fact is not material to his allegation of deliberate indifference. |
| 14.  Plaintiff alleges that Dr. Ola knew the life-threatening severity of Plaintiff's injuries yet provided minimal and ultimately ineffective pain management treatment as Plaintiff only received emergency services with adequate assessment, diagnosis, and treatment of an exploratory laparotomy from the outside hospital. | 14.  Argumentative, lacks foundation and personal knowledge, improper lay opinion.  Fed. R. Evid. 701.  Plaintiff's argument is unsupported by admissible evidence and is merely his own opinion. Plaintiff lacks the medical expertise and knowledge to opine as to whether Dr. Ola's treatment was within the standard of care and as to the "adequate medical treatment" he should have received on the date of incident. |
| 15.  Plaintiff alleges that his complaints of pains from his bruises and abdomen should be sufficient information provided to | 15.  Argumentative, lacks foundation, calls for speculation, and improper lay opinion.  Fed R. Evid. 701.  Plaintiff lacks the medical expertise and knowledge to opine as to whether Dr. Ola's |

Dr. Ola to receive adequate medical diagnosis and treatment.

treatment was within the standard of care and as to the "adequate medical treatment" he should have received on the date of incident.

17. Plaintiff disputes the relevance of no weapon or any sharp object found at the scene of the incident on the yard and argues that this should not be a factor in Dr. Ola's diagnosis and treatment of Plaintiff's injuries based on the visual puncture wound and Dr. Ola's determination of "possible penetration of the abdominal wall."

17. Lacks foundation, calls for speculation, and improper lay opinion. Fed R. Evid. 701. Plaintiff's argument is unsupported by admissible evidence, merely his own opinion as to the medical treatment he should have received on the date of incident. Plaintiff also lacks the medical expertise and knowledge to opine as to the appropriate standard of care and as to the "adequate medical treatment" he should have received on the date of incident.

19. Plaintiff disputes that the "abdominal wound measured about 1 to 2 centimeters in length" and argues that the wound was a "big hole" with a "skin flap: indicating a much larger depth to the wound.

19. Improper lay opinion. Fed R. Evid. 701. Plaintiff lacks the medical expertise and knowledge to opine as to size and depth of the wound.

21. Plaintiff disputes the relevance of "Dr. Ola ordered X-rays to be taken of Plaintiff's face and abdomen" and disputes that Dr. Ola had provided adequate emergency treatment to him.

21. Lacks foundation, calls for speculation, and improper lay opinion. Fed R. Evid. 701. Plaintiff's argument is unsupported by admissible evidence and is merely his own opinion. Plaintiff lacks the medical expertise

and knowledge to opine as to the appropriate standard of care and as to the "adequate medical treatment" he should have received on the date of incident.

22.  Plaintiff disputes the relevance of "the radiology report stated no indication of any air under the diaphragm or foreign body in the abdomen which would indicate a breach of the abdominal cavity" or Dr. Goller's conclusion in his radiology report that "no indication for exploratory laparotomy of Plaintiff."  He disagrees with the course of treatment and insists Dr. Ola not ordering a follow-up appointment until 4 days later demonstrates intentional disregard of danger to his health.

22.  Argumentative, lacks foundation, calls for speculation, and improper lay opinion.  Fed R. Evid. 701.  Plaintiff's argument is unsupported by admissible evidence, and is merely his own opinion.  Plaintiff lacks the medical knowledge and expertise to opine as to a different course of medical treatment he should have received on the date of incident or that a follow-up medical appointment 4 days after the incident was insufficient.  Even assuming arguendo that this report is not relevant, this disputed fact does not raise a triable issue regarding Plaintiff's allegation of deliberate indifference.

23.  Plaintiff disputes that "[he] agrees with Dr. Ola did not have additional information different from what was contained in the radiology report by Dr. Goller at the time Dr. Ola rendered medical treatment to him."  He cites another portion of his deposition transcript as evidence to dispute this fact.

23.  Argumentative, lacks foundation, and lacks personal knowledge as to what Defendant knew at the time of Plaintiff's treatment.  Plaintiff agreed to this fact at his deposition and now attempts to deny this fact by pointing to another portion of his deposition (where he spoke of hearsay statements purportedly from other

physicians) that does not address this issue that Dr. Ola had relied on information he received from Dr. Goller in arriving at his medical treatment plan for Plaintiff.

24.  Plaintiff disputes that "Dr. Ola did not observe symptoms of penetration of abdominal cavity requiring laparotomy such as hemodynamic instability, peritonitis, impalement, evisceration, and evidence of frank blood or bleeding of Plaintiff on May 29, 2014." He argues that Dr. Ola saw Plaintiff's visible injury and the abdominal wound, "possible penetration of the abdominal wall" that implicates internal bleeding and death.

24.  Argumentative, lacks foundation, calls for speculation, and improper lay opinion.  Fed R. Evid. 701.  Again, Plaintiff's argument is unsupported by admissible evidence and is merely his own opinion.  Plaintiff also lacks the medical knowledge, and expertise to opine as to a different course of medical treatment he should have received on the date of incident.

25.  Plaintiff disputes that "Dr. Ola educated and told Plaintiff about the signs of infection and peritonitis and to inform the clinical or custodial staff if he were to experience worsening pain or tenderness" and argues that neither custodial or clinical staff were responsive to Plaintiff's worsening condition.

///

///

25.  Argumentative, calls for speculation, lacks foundation.  Plaintiff fails to point to any admissible evidence to show that Dr. Ola did not educate him about peritonitis and inform him to alert clinical or custodial staff if his condition worsens, other than his own conclusory statement that he was disoriented and bleeding internally.

///

18

27.  Plaintiff disputes that "Dr. Ola issued a medical order for Plaintiff to have welfare checks daily for three (3) days, take follow-up X-ray(s) and scheduled an appointment for Plaintiff to be seen by his primary care physician on June 2, 2014."

27.  Argumentative, lacks foundation.  Plaintiff points to no admissible evidence to dispute this fact other than his own conclusory disagreement. Plaintiff testified at his deposition that he was seen by nurses at daily rounds and mediation passes after the incident.  (Defendant's Exhibit A, Plaintiff's Deposition, 37:8-24.)

20.  Plaintiff disputes Dr. Ola's "[n]o finding to suggest an abdominal penetration."  Plaintiff argues that Dr. Ola gave inconsistent statements first indicating a possible penetration of the internal abdominal cavity then concluding that Plaintiff's abdominal injury and slight open wound was caused by blunt force trauma.  Plaintiff also disputes the size of his abdominal wound and alleges that the wound was large with a skin flap not a mere laceration.

20.  Argumentative, lacks foundation, calls for speculation, and improper lay opinion.  Fed R. Evid. 701.  Again, Plaintiff's argument is unsupported by admissible evidence, and is merely his own lay opinion.  Plaintiff also lacks the medical knowledge and expertise to opine as to the standard of care or that a different course of medical treatment would have been appropriate on the date of incident.

## IX.    DISCUSSION - EIGHTH AMENDMENT MEDICAL CLAIM

The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  <u>Jett</u>, 439 F.3d at 1096.

///

///

### A.    Serious Medical Need

A serious medical need is shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id.  There is no dispute between the parties that Plaintiff had a serious medical need.

### B.    Dr. Ola's Knowledge of Plaintiff's Serious Medical Need

"Under th[e deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).

Plaintiff provides evidence of Dr. Ola's Interdisciplinary Progress Notes for treatment of Plaintiff, dated May 29, 2014, which indicate:

"Procedure: abdominal wound suture.

Indication: stab injury on yard & assault.  Informed consent obtained from patient, wound cleaned and sterile drapes applied.

Anesthetics: Local lidocaine 2cc wound explored with cotton tipped applicator in suture set.

Finding 2 cm long stab wound.  Distal end shows possible penetration of abdominal wall.

Recommendation/plan: Sign of infection discussed, oral Keflex 500 mg. 9id x 10 days.  Daily welfare check by RN, MDL w. TTA Monday.  Pain mgt."

(ECF No. 1 at 18-20, 26 (Exh. B).

The Court finds that such evidence places Dr. Ola on actual notice of Plaintiff's injury, and the fact that Dr. Ola scheduled Plaintiff for follow-up treatment provides further support for "the conclusion that Dr. Ola was aware of the seriousness of Plaintiff's condition."  (ECF No. 25 at 4:10-16); See Jones v. Wong, No. 2:15-cv-0734-TLN-AC, 2018 WL 2297056, at *4 (E.D. Cal. May 21, 2018) (noting that a defendant's "alleged offer to schedule additional treatment by a specialist is adequate to allow the court to infer that she believed plaintiff's

///

symptoms presented a serious medical need"). Thus, Plaintiff has shown that Dr. Ola was aware of the seriousness of Plaintiff's medical need.

### C.   Deliberate Indifference to Risk of Harm

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal citation and quotation marks omitted). "The state of mind for deliberate indifference is subjective recklessness." Pozzi v. Cnty. of Los Angeles, No. 2:20-CV-07035-SVW-PJW, 2020 WL 6586307, at *1 (C.D. Cal. Sept. 9, 2020) (citing Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012)).   To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." Piro v. Carlin, No. 1:18-CV-00327-BLW, 2020 WL 2044617, at *12 (D. Idaho Apr. 28, 2020) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 989 (7th Cir. 1998); see also Lamb v. Norwood, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Here, Plaintiff has not met his burden to present evidence demonstrating that Dr. Ola was deliberately indifferent in response to Plaintiff's medical need.  The analysis of a medical claim under the Eighth Amendment rests on whether Defendant knew about Plaintiff's serious medical needs, was consciously aware that Plaintiff faced a substantial risk of serious harm to his health, and yet deliberately ignored the risk or otherwise acted unreasonably causing Plaintiff harm or injury. Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff has not proven that Dr. Ola treated him with deliberate indifference in violation of the Eighth Amendment. Plaintiff's evidence is not sufficient to overcome the undisputed facts as the pertain to the deliberate indifference standard.

It is undisputed that on or about May 29, 2014, at approximately 11:00 a.m., Plaintiff was attacked by other inmate(s) while he was out at B yard during yard time. (Plaintiff Depo. at 9:3-

8, 12-15, 16-23.) Plaintiff was first escorted to the clinic on B yard. (Plaintiff Depo. at 10:12-19.) Then, he was escorted to the CTC where he was seen by Dr. Ola. (Id.) Dr. Ola checked Plaintiff's vitals and found them to be stable; Plaintiff complained to Dr. Ola that he had pains from his bruises and abdomen. (Plaintiff Depo. at 16:7-19, Def. Decl. at ¶ 7.)

Although the parties dispute the size of his wound, it is undisputed that Plaintiff had an abdominal wound. (Def. Decl. at ¶ 9.) Dr. Ola conducted a local wound exploration of Plaintiff's abdominal wound with a cotton swab in order to examine the fascia of the muscle protecting the abdomen. (Plaintiff Depo. at 18:16-19, Def. Decl. at ¶ 10.)

Plaintiff provides a medical record as documentary evidence that at 1:25 p.m. on May 29, 2014, Dr. Ola wrote on a progress note that Plaintiff had suffered no loss of consciousness, no headaches, no nausea, and sustained a 2cm lower abdominal superficial stab wound to his abdomen. (Exh. to Cmp, ECF No. 1 at 60.) Dr. Ola also noted that Plaintiff had sustained multiple superficial bruises to his back and knee, along with swelling. (Id.) Also, Dr. Ola noted that he treated Plaintiff with medications, applied steri-strips and a single stitch to the superficial wound, and took x-rays of Plaintiff's face and abdomen (Id.)

The parties dispute whether there was a finding by Dr. Ola that Plaintiff's wound may have penetrated his abdomen. Dr. Ola declares that there was no finding to suggest an abdominal penetration, (Def. Decl. at ¶ 10), but Plaintiff testifies and provides documentary evidence that "[w]ithin 3 hours and 20 minutes of the (stabbing) incident, Dr. Ola noted that I had a 'possibly perforated (penetration of) abdominal wall,' and yet still 'medically cleared' me after simply suturing the wound with no further significant diagnosis or treatment." (Complaint, ECF No. 1 at 18-20, 26 (Exh. B.), p. 15 PVSP reports and CDC 114-D – see ECF No. 1 at 26 – medical report dated 5/29/14 at 2:15pm.) A material fact is genuinely disputed if the evidence is such as would permit a reasonable fact finder to return a verdict for the nonmoving party. Fed. Rules Civ. Proc. Rule 56(a). Here, and importantly, the parties' dispute about whether Dr. Ola found that Plaintiff's wound may have penetrated his abdomen is not material for purposes of the court's analysis of Defendant's motion.

The parties also dispute whether Plaintiff refused to provide details during Dr. Ola's examination of what transpired to cause his injuries. Dr. Ola declares that Plaintiff refused to discuss the nature of the assault, the number of inmates involved, or whether any instruments were used during the attack, (Def. Decl. at ¶ 5), whereas Plaintiff states that he (Plaintiff) did not refuse to discuss the attack, he simply did not have information about the attack. (Pltf. Decl., ECF No. 67 at 6 ¶ 16.)  Again, this is not a genuine material dispute of fact that affects the court's analysis of Defendant's motion.

It is undisputed that on May 31, 2014, at around 4:00 p.m., Plaintiff was transferred from his administrative segregation cell to the clinic. (Plaintiff Depo. at 24:18-26:6.) where Dr. Ola was the on-call CDCR Physician and Surgeon for PVSP CTC on Saturday May 31, 2014. (Def. Decl. at ¶ 15.)  Upon hearing Plaintiff's symptoms from a CDCR nurse, Dr. Ola immediately ordered that Plaintiff be transferred Code 2 by ambulance to an outside hospital for emergency medical treatment of his worsening condition. (Id.)  At about 7:30 p.m. on May 31, 2014, Plaintiff was admitted to the local hospital where Dr. Townsend performed emergency exploratory laparotomy to remove sections of Plaintiff's lower bowels and small intestines. (Plaintiff Depo. at 29:6-15, 30:1-16, 32:13-33:1, Def. Decl. at ¶ 16.)  On June 9, 2014, a subsequent surgery was also performed upon Plaintiff's abdomen with no complications from the surgeries noted. (Plaintiff Depo at 31:3-8, 32:13-33:1, Def. Decl. at ¶ 16.)

Plaintiff alleges in the First Amended Complaint that he was stabbed in the abdomen on May 29, 2014, and that Dr. Ola failed to give him adequate medical care.  (ECF No. 21 at 8.)  However, in his deposition dated January 22, 2021, Plaintiff responded that his issue with Dr. Ola was that he (Plaintiff) disagreed with the doctor's choice of treatment, but did not have evidence that the doctor intentionally wanted to hurt him:

> Q.    Mr. Sifuentes, you testified that you disagree with Dr. Ola's treatment plan, and that's why you think he was deliberately indifferent to you; is that correct?
>
> A.    Yes.

(Plaintiff Depo., ECF No. 54-3 at 37:10-18.)

Q.    Now, do you have any direct evidence that Dr. Ola's decision to not

provide you with a different treatment from what was recommended . . .

was because he intentionally wanted to hurt you?

A.    No.

(Id. at 36:8-12.)

As discussed previously, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin, 662 F.2d at 1344.  The Eighth Amendment requires that prison medical providers exercise informed medical judgment.  Jones v. Rogers, No. 1:21-CV-00340-DCN, 2021 WL 4751416, at *5 (D. Idaho Oct. 12, 2021).  In cases involving "choices between alternative courses of treatment," plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that "they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Gordon v. Cnty. of Orange, 6 F.4th 961, 970 (9th Cir. 2021) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted), overruled in part on other grounds by Peralta, 744 F.3d at 1076.

Dr. Ola declares:

"The standard of care for cases of a possible stab wound call for a determination

of the injury being a laceration verses a penetration of the abdominal cavity

requiring laparotomy.   The indication for laparotomy are hemodynamic

instability, peritonitis, impalement, evisceration and presence of frank blood or

bleeding.  I did not observe any of these symptoms during my examination of

Plaintiff on May 29, 2014."

(Decl. of Ola, ECF No. 55-4 at 3 12.)

It is undisputed that Dr. Ola conducted a local exploration of Plaintiff's abdominal wound with a cotton swab in order to examine the fascia of the muscle protecting the abdomen, found no abdominal penetration and closed Plaintiff's abdominal wound with sutures. (Plaintiff Depo. at 18:16-19, 19:20-20:2, Def. Decl. at ¶ 10.)  The x-rays and other tests he ordered did not indicate air in the diaphragm or a foreign body in the abdomen which would indicate a need for

exploratory laparotomy of Plaintiff.  (Def. Decl. at ¶¶ 11, 12, Plaintiff's Complaint, ECF No. 1 at 61.)  In this scenario, Plaintiff cannot establish deliberate indifference as the undisputed facts demonstrate that Dr. Ola made an individualized assessment of Plaintiff's condition and chose a treatment that, in Dr. Ola's informed judgment, was medically appropriate.   Plaintiff has not shown that the treatment course pursued by Dr. Ola was "medically unacceptable" and "in conscious disregard of an excessive risk to [his] health," since Dr. Ola provided valid, medically sound reasons for the chosen treatment plan.  Anderson v. Dzurenda, No. 3:18-CV-00426-MMD-CLB, 2021 WL 4171710, at *3 (D. Nev. Sept. 14, 2021), appeal dismissed, No. 21-16549, 2022 WL 260053 (9th Cir. Jan. 27, 2022) (quoting see Toguchi, 391 F.3d at 1058).  Plaintiff's opinion that Dr. Ola should have given him different treatment is only a difference of opinion with his medical caregiver, which does not rise to the level of an Eighth Amendment violation.

MOST IMPORTANTLY, Plaintiff cannot establish that anything Dr. Ola did or failed to do caused Plaintiff harm.  Plaintiff is not competent to provide medical opinion evidence sufficient to create any triable issue of fact in this case.  See Fed. R. Civ. P. 56(c)(4) ("affidavit or declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  Plaintiff has presented no evidence that any conduct by Dr. Ola in response to Plaintiff's medical need fell below the medical standard of care so significantly that it could constitute deliberate indifference under the Eighth Amendment, or that Dr. Ola acted unreasonably in response to the knowledge that Plaintiff faced a substantial risk of serious harm, in turn causing Plaintiff harm.  Rather, Plaintiff's causation arguments rely entirely on his non-medical opinion.  Plaintiff's opinion testimony is not admissible under Rule of Evidence 701 because he is a layman and not a medical expert:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

25

**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Accordingly, based on the foregoing, the court should grant Defendant's motion for summary judgment on Plaintiff's § 1983 claim of deliberate indifference in violation of the Eighth Amendment.

## X.    CONCLUSION AND RECOMMENDATIONS

The court finds and shall recommend that based on the undisputed facts, Defendant's motion for summary judgment, filed on May 28, 2021, should be granted.  In light of this recommendation, the court declines to consider Defendant's qualified immunity argument.

Therefore, based on the foregoing, it is **HEREBY RECOMMENDED** that:

1.    The motion for summary judgment filed by Defendant Dr. Ola on May 28, 2021, be GRANTED as to Plaintiff's § 1983 claims against him under the Eighth Amendment;

2.    Summary judgment be granted to Defendant Dr. Ola; and

3.    The Clerk of Court be directed to enter judgment in favor of Defendant Dr. Ola and close this case.

IT IS SO ORDERED.

Dated:   **July 18, 2022**                         **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE